THE PEOPLE OF PUERTO RICO, Plaintiff and Appellant, *v.* IGNA-CIO T. PEÑAGARÍCANO, EDUARDO G. GONZÁLEZ and MARYLAND CASUALTY COMPANY OF BALTIMORE, Defendants and Appellees.

No. 7707. Argued March 23, 1939.—Decided April 14, 1939.

*B. Fernández García, Attorney General,* and *M. Rodríguez Ramos, Assistant Attorney General,* for appellant; *Juan B. Soto* and *E. Igaravídez,* for appellee Maryland Casualty Co. of Baltimore.

MR. JUSTICE TRAVIESO delivered the opinion of the Court.

On September 15, 1927, defendants Peñagarícano and González, partners and owners of a stadium dedicated to boxing exhibitions, and the bonding company Maryland Casualty Company, signed a bond in favor of The People of Puerto Rico for $5,000, a bond which according to section 5 of Act No. 15, approved May 16, 1927 (Laws of 1927, page

584

438) must be issued by any person to whom a license for the operation of a stadium in Puerto Rico is granted. In what is pertinent, the bond reads as follows:

"KNOW ALL MEN BY THESE PRESENTS that the partnership 'Peñagarícano, González & Co., S. en C.', by their managing partners Ignacio T. Peñagarícano and Eduardo G. González, of San Juan, P. R., as principals, and the Maryland Casualty Company, of San Juan, P. R., as surety, are held and firmly bound unto The People of Puerto Rico in the sum of five thousand dollars ($5,000), lawful money, to be paid to the Treasurer of Puerto Rico, *according to the conditions hereby established and to those provided by the aforesaid act,* to which payment well and truly to be made we bind ourselves, our heirs, executors and administrators, jointly and severally firmly by these presents.

"WHEREAS. the said Ignacio T. Peñagarícano and Eduardo G. González own a stadium in Stop 15 of Santurce, in the municipality of Santurce, P. R., where they celebrate boxing and wrestling matches, being bound to pay a tax of 10% to the Treasurer of Puerto Rico on the gross income produced by the sale of tickets in each exhibition;

"WHEREAS the said Ignacio T. Pegagarícano and Eduardo G. González *are subject to the payment of any tax levied on the stadium,* or to claims for damages caused by the operation of the stadium; and

"WHEREAS, said Ignacio T. Peñagarícano and Eduardo G. González are bound to comply with other provisions established in said Act No. 15;

"Now, THEREFORE, if the said Ignacio T. Peñagarícano and Eduardo G. González refuse or fail to pay the 10% of the gross income produced by the sale of tickets in the form and in the dates established, *or refuse or fail to pay any other tax,* or refuse or fail to pay any claim for damages caused by the operation of the stadium, when such claim be duly and legally determined, or refuse or fail to fulfill any other obligation established by said Act No. 15, the said surety will pay the total amount of such debts and claims contracted or incurred by the principal in this bond, otherwise the bond issued or the deposit made will be confiscated in favor of The People of Puerto Rico, entering unto the general funds of The People of Puerto Rico whatever amount remains after payment of all claims." (Italics supplied.)

On October 5, 1936, The People of Puerto Rico filed a complaint against the principals and against the surety company alleging two causes of action. In the first the plaintiff claims $3,002.11 ''on account of income tax at source and penalties up to September 1, 1936, said tax having been imposed to the above mentioned partnership upon payment made by it to non-residents for services rendered in this island with relation to the boxing matches celebrated in the stadium of the above mentioned partnership.'' In the second cause of action the plaintiff claims $132.47 ''on account of excise tax upon public shows celebrated in the stadium'' of the partnership Peñagarícano, González & Co., S. en C.

The lower court sustained a demurrer to the complaint as regard the Maryland Casualty Company, without prejudice to allowing the suit to continue against the other two defendants. The plaintiff filed this appeal. Out of the four assignments of error we shall only consider the first and the second, which may be condensed in these few words: ''The lower court erred in deciding that the complaint does not allege sufficient facts to. constitute a cause of action against the surety company.''

According to section 5 of Act No. 15, supra, the only thing which the owner of a license to operate a stadium is obliged to guarantee is: (a) the payment of any tax imposed upon the stadium; and (b) the payment of any damages caused by the operation of the stadium.

Section 10 of that same Act No. 15 imposes upon the person who operates a stadium the duty to pay to the Treasurer of Puerto Rico a tax of 10 per cent of the gross income produced by the sale of tickets to the show. We have carefully examined said law and we do not find in it any provision by which a tax is imposed on the business of keeping and operating a stadium in Puerto Rico. We have no doubt that the payment of the 10 per cent tax of the gross income which section 10 of the Act imposes upon the stadium is guaranteed by the bond issued by the Maryland Casualty Company.

Is the suretee company bound, according to said Act No. 15 and to the terms of the bond issued by the company, to answer for the payment of the amounts claimed in the complaint? No such duty is imposed on the defendant corporation.

Section 22 of Act No. 74, approved August 6, 1925 (Laws of 1925, page 400), which is the basis of defendant's contention, imposes upon all persons, in whatever capacity acting, who pay wages or salaries of any non-resident individual not a citizen of Puerto Rico, the duty to deduct and withhold an income tax equal to 6% of the amounts thus paid and to pay the amount of said tax to the Treasurer of Puerto Rico on or before the 15th of June of each year. It is further provided in said section (paragraph (b)), that "every such person is hereby made liable for such tax."

We agree with the lower court in that the tax of 6% provided by section 22 of Act No. 74, supra, cannot be considered legally as a tax levied on the business of the stadium, or as it appears from the English text, "levied on the stadium." The payment of said tax is a debt upon "non-resident individuals not citizens of Puerto Rico," the payment of which is guaranteed by the duty collaterally imposed by the law upon the payor of the taxable income to retain the amount of the tax and to answer for its payment.

We have not been able to find in the Income Tax Act No. 74, supra, any provision imposing upon persons under obligation by section 22 of that same act to retain the amount of the tax at source, the duty to insure the performance of said obligation, nor any provision authorizing the Treasurer of Puerto Rico to exact the execution of said bond. There is no reason for establishing the presumption that the contracting parties had in mind to insure the amounts now claimed from the appellee bonding company.

From the above facts only one legal presumption may arise, to wit, that on subscribing the bond the parties had in mind to adjust themselves to and comply with the statute,

which requires the issuance of such bond, that is, Act No. 15, approved in 1927. Said Act is a part of the bond as much as if it had been incorporated under its terms; and the bond must be interpreted together with the statute and according to its purpose. 9 C. J. 34; *Avilés* v. *Hijos de Rafael Toro, S. en C., et al.,* 27 P.R.R. 616; section 1726 of the Civil Code (1930 ed.).

We agree with the lower court in that according to the maxim *ejusdem generis,* the phrase ''or refuse or fail to pay any other tax'' which appears in the bond, refers to other taxes which, the same as the 10 per cent of the gross income from the sale of tickets, is levied upon the stadium, but not to the taxes or excises with which the complaint deals.

For the above reasons the judgment appealed from must be affirmed.

Mr. Associate Justice De Jesús took no part in the decision of this case.